1:24-mj-3030-TMP

## AFFIDAVIT

I, DEA Task Force Officer Luke Combs, being duly sworn, depose and say the following:

## INTRODUCTION

1. Your Affiant submits this affidavit in support of a criminal complaint and arrest warrant charging Derek NICODEMUS with possessing with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

## AGENT'S BACKGROUND

2. Your Affiant, Luke Combs, is currently employed as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and has been so since 2011 as a Task Force Officer. Affiant is an "Investigative Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and is empowered by law to conduct investigations, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. Affiant is a member of the Beachwood Police Department since October 2018, and is also assigned as a TFO with the DEA and that his training and experience include the following: 13 years as a TFO with the DEA, and 25 years of law enforcement experience, including previous employment with the Belmont and Cuyahoga County Sheriff's Offices which facilitated additional training experience in the investigation of drug trafficking offenses.

4. My experience as a TFO includes but is not limited to: physical and electronic surveillance, participating in Title III wiretap investigations, analyzing pen register and telephone toll data, interviewing witnesses, executing search warrants seeking evidence of drug violations, processing seized evidence, supervising the purchase of controlled substances by

confidential sources, and debriefing persons arrested and convicted of drug trafficking offenses regarding their illegal activity.

5. In my current assignment to the CDO, I have participated in investigations targeting individuals and organizations committing drug trafficking offenses in the Northern District of Ohio and elsewhere. At all times during the investigation described herein, I have been acting in an official capacity as a TFO with the DEA.

6. I have been involved in numerous narcotics-related arrests, have executed search warrants, seized narcotics or dangerous drugs. I have supervised the activities of numerous informants and cooperating witnesses who have provided information and assistance resulting in drug buys, searches, and arrests. Based on the above experience, I am familiar with the *modus operandi* of persons involved in the illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances. I am aware that persons involved in the illicit distribution of controlled substances nearly always attempt to conceal their identities and the locations at which drug transactions take place. I know that individuals engaged in organized drug distribution and sales often maintain records of those sales and also maintain extensive contacts with persons from whom they receive drugs and to whom they distribute drugs. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds.

7. I have also received training in the identification of narcotics, search and seizure issues, and preparing search warrants. I have had experience in surveillance techniques, investigating narcotic and criminal cases, including the preparation and execution of narcotic and other criminal case search warrants and debriefing of defendants, witnesses, cooperating sources and other persons who have personal knowledge of narcotics and criminal violations. I have

been involved in narcotic related arrests and executed search warrants, which resulted in the seizure of narcotics, and supervised the activities of informants who have provided information and assistance resulting in narcotic purchases. I have questioned suspects, debriefed informants and have conferred with other officers and prosecuting attorneys, and as a result have gained experience in investigating drug trafficking organizations.

8. On a regular basis, I review law enforcement bulletins and intelligence reports regarding narcotic trafficking and smuggling and remain in communication with counterparts in order to keep up to date with modern techniques and trends used by narcotic traffickers in the domestic and international arena.

## **PROBABLE CAUSE**

9. On June 28, 2023, investigators established surveillance in anticipation of conducting a controlled purchase of approximately one (1) kilogram of cocaine in the for $25,000 from Derek NICODEMUS utilizing a local confidential source (CS).

10. Investigators recorded the conversations between NICODEMUS and the CS using audio recording equipment provided to CS by investigators. The communication between CS and NICODEMUS occurred over "FaceTime". These recordings were subsequently downloaded and stored for evidence by Affiant.

11. On this date, NICODEMUS, while driving a 2016 maroon Chrysler 300, delivered a kilogram of suspected narcotics to the CS and an undercover (UC) officer in the Northern District of Ohio. Subsequently, investigators processed the evidence, later identified as Exhibit 1, awaiting submission to the local laboratory for testing.

12. On June 29, 2023, the suspected narcotics were submitted to the Cuyahoga County Regional Forensic Science Laboratory (CCRFSL) for forensic analysis.

13. On July 7, 2023, investigators received CCRFSL report # 2023-005149-001. Exhibit 1 in the report tested positive for 1002.71 grams of Cocaine Hydrochloride.

14. On August 11, 2023, investigators conducted physical surveillance in the metropolitan area of Dayton, Ohio and greater Cleveland, Ohio area in anticipation of conducting a controlled purchase of approximately four (4) kilograms of cocaine and three (3) pounds of psilocybin mushrooms from NICODEMUS utilizing the aforementioned CS. These conversations were recorded by investigators utilizing a audio recording device and subsequently downloaded and marked as evidence in this case.

15. On the same date, investigators followed NICODEMUS from the Dayton, Ohio area towards the meeting location followed by a "trail" car. Investigators initiated a traffic stop on both vehicles in the Northern District of Ohio on interstate I-71 northbound. The trail car pulled over and investigators recovered suspected narcotics that were ordered by the CS through NICODEMUS. NICODEMUS who was in the lead car, a 2016 maroon Chrysler 300, initially pulled over then fled at a high rate of speed. The Ohio State Highway Patrol pursued NICODEMUS, however, later terminated the pursuit, as they were unable to locate NICODEMUS.

16. Based on my training and experience, the amount of suspected narcotics recovered during the search warrants and traffic stop were intended for distribution, not personal use. This is based on the significant quantity of suspected narcotics present, how they were packaged and how they were concealed within the residences and how NICODEMUS had them driven in a separate vehicle in an attempt to thwart law enforcement detection while NICODEMUS followed in tandem driving the same vehicle utilized in the controlled purchase back in June 2023.

17. Following the traffic stop, investigators executed two search warrants at two stash locations associated with NICODEMUS, one of which in Dayton, Ohio and the other in Kettering, Ohio. The aforementioned search warrants were sworn to and obtained in the Southern District of Ohio by United States Magistrate Judge Caroline Gentry.

18. Prior to the traffic stop and controlled purchase mentioned above, investigators observed NICODEMUS entering and exiting the locations mentioned within this affidavit. NICODEMUS further showed the CS the interior of the search warrant location via "FaceTime" while he was inside this residence. Furthermore, NICODEMUS was arrested by Dayton Police department in front of the search warrant location. During this arrest, NICODEMUS stated that this was his home address.

19. Affiant avers that investigators also uncovered a police report from the Kettering Police Department in which, NICODEMUS stated that his residence (the other search warrant location) in Kettering, Ohio, had an attempted robbery. This is also associated to NICODEMUS' girlfriend and her registered address.

20. In summary, the following items of evidentiary value were recovered and seized by law enforcement from the traffic stop on Interstate I-71 N in Medina County, Ohio from the trail car sent by/followed in tandem by NICODEMUS:

- One (1) loaded firearm[1] with an extended magazine
- Four (4) kilograms of suspected cocaine (field tested positive for cocaine)
- Three (3) pounds of suspected psilocybin mushrooms

21. In summary, the following items of evidentiary value were recovered and seized

---

[1] Glock 26 pistol with an extended magazine containing thirty (30) rounds of 9mm ammunition.

by law enforcement from the residences in Kettering, Ohio and Dayton, Ohio, both known stash houses associated with NICODEMUS:

- Four (4) firearms[2]
- Various amounts of ammunition[3] and magazines
- Approximately 88.6 pounds of suspected marijuana
- Approximately 56 pounds of suspected psilocybin mushrooms
- Approximately 25.8 pounds of suspected THC wax
- Approximately 95 pounds of suspected hashish oil

22. NICODEMUS[4] is prohibited under federal law from possessing firearms or ammunition due to the following prior conviction, which carried a maximum penalty of more than one year of imprisonment: Drug Trafficking (F3), on or about November 30, 2018, in the Greene County Common Pleas Court, under case number 2018CR0398.

23. On February 24, 2024, Dayton Police Department (DPD) and the Ohio State Highway Patrol (OSHP) were conducting an interdiction operation for Grand Theft Auto. During this operation, DPD observed NICODEMUS driving erratically and attempted to conduct a traffic stop with the assistance of OSHP in Dayton, Ohio. NICODEMUS fled and led investigators on a pursuit through several neighboring cities that eventually led to OSHP deploying spike strips in an effort to stop the vehicle. NICODEMUS then fled on foot and was subsequently apprehended by law enforcement and booked into the Montgomery County Jail pending state charges of Receiving Stolen Property, Obstructing Official Business and Resisting Arrest.

---

[2] Specifically, a Palmetto State Armory Model PA-15; a 12-gauge Remington shotgun model# M887; a Radical Arms Model RF-15; and CZ Scorpion Pistol model# EVO 3 S1.
[3] Specifically, a .223 caliber, 9mm, .40 caliber and 12-gauge shotgun shells.
[4] NICODEMUS was sentenced to state prison for one (1) year in case # 2018CR0398.

24. Based on the above, there is probable cause to believe that NICODEMUS has violated 21 U.S.C. § 841(a)(1) and (b)(1)(B) that is, distribution and possession with intent to distribute controlled substances.

_TFO [signature]_
Luke Combs
Task Force Officer
Drug Enforcement Administration

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



[signature]
Thomas M. Parker
United States Magistrate Judge
1:48 PM, Feb 26, 2024